IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY MUSIAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06 C 2858 |
| ) | |
| MIDWEST GENERATION EME, LLC ) | |
| and IBEW LOCAL 15, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

*Pro se* plaintiff Stanley Musial sued his former employer, Midwest Generation EME, LLC and the labor union that represents workers at Midwest, IBEW Local 15, alleging that he was laid off from his job at Midwest in violation of the Age Discrimination in Employment Act. Both Midwest and Local 15 moved to dismiss Musial's complaint for failure to state a claim, contending that Musial had failed to file a timely administrative charge of discrimination, a prerequisite to suit under the ADEA. The Court converted the defendants' motions to motions for summary judgment and advised Musial what he needed to do to respond to the motions. For the reasons stated below, the Court grants summary judgment in favor of the defendants.

### Facts

Musial became an employee of Midwest in December 1999, when Midwest acquired the Commonwealth Edison electricity generating plant where he worked. By November 2004, Musial, then age 46, held the position of material and supply coordinator at Midwest's Fisk Generating Station. Musial Aff., p. 5.

In November 2004, Midwest implemented a reduction in force that resulted in the elimination of three material and supply coordinator positions. Siegman Aff. ¶ 5. Midwest used an established seniority list, agreed to by Local 15, to determine which material and supply coordinators would be laid off. *Id.* ¶ 6. Musial was last on the list and was laid off on November 12, 2004. *Id.* ¶ 9.

In an affidavit submitted in response to defendants' motions, Musial has identified a number of instances, all prior to his termination, that he believes show unfair treatment by Midwest and Local 15. He says that employees who had less time in service than he did were placed ahead of him on the seniority list. Musial Aff., pp. 2, 4-6. In December 1995 and again in December 1999, Musial says, he was passed over for promotions. *Id.,* pp. 2, 4. Although Musial says he was not initially aware of the seniority list or that he had been passed over in December 1995, he says he learned of these occurrences in August 1999. *Id.,* pp. 3-4. Shortly after learning this information, Musial says, he called his union representative to complain about the seniority list. *Id.,* p. 4.

Musial also states that Local 15 eliminated "department seniority," which, he contends, led to his being laid off. It is clear from the charge of discrimination that Musial filed against Local 15 that he was aware of this policy in 2001. *See* Charge of Discrimination dated Feb. 17, 2006 (attached to plaintiff's complaint).

On November 19, 2004, one week after he was laid off, Musial sent a letter to Local 15 requesting copies of collective bargaining agreements from 1995-1997 and the seniority list from May 1, 1994. Musial Aff., p. 6. Musial received a copy of the collective bargaining agreement as revised on March 4, 1997 but did not receive a copy of the seniority list. *Id.* Musial waited

2

until January 2006 to again contact Local 15 to request a copy of the collective bargaining agreement in existence in 1995-96. *Id.* In April 2006, Musial received documents from Commonwealth Edison that included a copy of the 1995-96 version of the collective bargaining agreement. *Id.*

On February 17, 2006, over 460 days following his layoff, Musial filed charges with the EEOC against Midwest and IBEW Local 15. In both charges, Musial alleged a single date of discrimination – November 12, 2004, the date he was laid off by Midwest. On February 28, 2006, the EEOC dismissed the charges, advising Musial they had not been timely filed. Musial filed suit in this Court in May 2006.

### Discussion

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "material" if it is outcome-determinative. *Smith v. Potter*, 445 F.3d 1000 (7th Cir. 2006). In considering a motion for summary judgment, a court must construe the facts in the light most favorable to the non-moving party and draw reasonable inferences in that party's favor. *See, e.g., Fairchild v. Forma Scientific, Inc.,* 147 F.3d 567, 571 (7th Cir. 1998).

Timely filing of an administrative charge of age discrimination is a prerequisite to maintaining an action under the ADEA. 29 U.S.C. § 626(d). In a so-called "deferral state" like Illinois, the plaintiff must file an administrative charge within 300 days after the alleged unlawful discriminatory practice occurred. *Id.*; *see also, e.g., Hamilton v. Komatsu Dresser*

3

*Indus.*, 964 F.2d 600, 603 (7th Cir. 1992) (quoting 29 U.S.C. § 626(d)(2)). A plaintiff's failure to file a timely administrative charge bars a later suit under the ADEA. *Casteel v. Exec. Bd. of Local 703 of Int'l Brotherhood of Teamsters,* 272 F.3d 463, 466 (7th Cir. 2001).

The 300 day limitation period begins to run at "the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (concluding that the statutory period commenced to run when adverse tenure decision was made and plaintiff was notified, not when he was actually let go by the college a year later) (emphasis in original; internal quotations and citations omitted); *see also Hamilton*, 964 F.2d at 606 (statutory period began to run when the plaintiffs were denied training, not when the effects of that denial – not being promoted and eventual layoff – occurred).

Construing the facts in the light most favorable to Musial, the latest the 300 day period could have started to run was the date he was laid off. A plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful. *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995) (noting that plaintiff's injury was his termination; action accrued when he was informed that he was to be terminated). Musial learned on November 12, 2004 that he being laid off. Despite this, he waited until February 17, 2006, over 460 days later, to file an EEOC charge.

The 300 day limitation is subject to equitable modification. *See id.* at 467; *Chakonas v. City of Chicago,* 42 F.3d 1132, 1135-36 (7th Cir. 1994). The limitation can be extended via equitable tolling or equitable estoppel. *See, e.g., Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir. 1990). To invoke equitable tolling, a plaintiff must show that despite due

4

diligence, he was unable to obtain essential information bearing on his claim. *Casteel,* 272 F.3d at 467. To determine whether a plaintiff lacked such information, a court asks whether a reasonable person in the plaintiff's position would have been aware that he had been fired in possible violation of the ADEA. *See Chakonas,* 42 F.3d at 1135. Equitable estoppel applies if the plaintiff's untimely filing was the result of either a deliberate design on the part of the defendant or actions the defendant should have understood would cause a delay in filing. *Hamilton,* 964 F.2d at 605. The plaintiff must show improper conduct by the defendant and actual, reasonable reliance on that conduct. *Id.*

1.  **Equitable tolling**

    The undisputed facts show that Musial was in possession of the information necessary to file his administrative charge as of November 12, 2004. When Musial was notified on that date that he was being laid off, he was already aware of the allegedly discriminatory seniority list. Indeed, Musial had complained about the list and Midwest's promotion policy several times before that date, including in August 1999. Musial knew he had been injured – laid off – as a result of application of the seniority list that he claims was discriminatory. Thus, he cannot contend that he lacked vital information bearing on the existence of his claim. *See Casteel*, 272 F.3d at 467 (plaintiff could not assert equitable tolling where he knew of and complained about changes made to shift seniority).

    Musial's contention that the copy of what appears to have been an earlier version of the collective bargaining agreement that Commonwealth Edison sent him in April 2006 somehow revealed wrongdoing by IBEW Local 15 is insufficient to extend the statutory period. Musial filed his EEOC charges in February 2006, nearly two months *before* he received that version of

the collective bargaining agreement. Under the circumstances, Musial has no viable claim that this document provided the information he had been lacking that would permit him to make an EEOC charge.

Musial also points out that Local 15 did not send him an updated copy of the seniority list after he requested it in November 1994. Again, however, Musial filed his EEOC charge before getting a copy of that updated list – indeed, he says he never got a response to his request from Local 15. Thus Musial cannot contend that his non-receipt of the list prevented him from having the fact he needed to file an EEOC charge.

**2.      Equitable estoppel**

Equitable estoppel "focuses on the actions of the defendant." *Hamilton*, 964 F.2d at 605. Musial does not contend that Midwest or Local 15 took any active steps to prevent him from filing a charge with the EEOC. Specifically, Musial does not allege that Midwest or the union lulled him into a false sense of security regarding the statute of limitations for his age discrimination claim. *See Cada*, 920 F.2d at 451. In addition, Musial has presented nothing suggesting that he delayed the filing of his EEOC charge in reliance on anything the defendants did. *See Hamilton*, 964 F.2d at 606.

Though Musial alleges that IBEW Local 15 hid the seniority list from him for over three years, he concedes that he became aware of the list on August 20, 1999, nearly five years before he was laid off. Thus when he was laid off in November 2004, Musial was aware of the facts that he contends formed the basis for a charge of age discrimination: the existence of a discriminatory seniority list, and the application of that list to his detriment. Musial cannot blame either defendant for the fact that he waited until February 17, 2006 to file charges with the

EEOC.

## Conclusion

Based on the undisputed facts, Musial's EEOC charge was not timely filed, and there is no basis to toll or extend the statutory limitations period. For this reason, the Court grants defendants' motions for summary judgment [docket nos. 7, 9]. The Clerk is directed to enter judgment in favor of the defendants.

_____
            MATTHEW F. KENNELLY
            United States District Judge

Date:   October 26, 2006